**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                No. CR 07-229  JB

CHRISTIAN RODRIGUEZ-GARCIA,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on (i) the Motion for Reasonable Sentence and Sentencing Memorandum, filed April 12, 2007 (Doc. 15); and (ii) the Amended Motion for Reasonable Sentence and Sentencing Memorandum, filed April 13, 2007 (Doc. 16)("Sentencing Memorandum").  The Court held a sentencing hearing on May 23, 2007.  The primary issue is whether the Court should grant Defendant Christian Rodriguez-Garcia a variance from the sentence the United States Sentencing Guidelines recommend because the sentence is greater than necessary to achieve federal sentencing goals.  Because the Court believes that, when it considers Rodriguez-Garcia's overall criminal history in the context of the 18 U.S.C. § 3553(a) factors applicable to its sentencing analysis, his criminal history category of VI is too high, the Court will grant him a downward departure under the Guidelines and impose a sentence consistent with a criminal history category of V.  Because the Court believes, however, that Rodriguez-Garcia's personal history and his family situation are not significantly different from many defendants charged with illegally re-entering the United States after deportation, it will not otherwise vary from the guideline sentence.

**FACTUAL BACKGROUND**

Rodriguez-Garcia reports that he was born on March 16, 1976 in Curanamo, Guanajuato, Mexico. See Presentence Investigation Report ¶ 29, at 9 ("PSR"). He stated that he resided in Palomas, Chihuahua, Mexico until the age of three, at which time he moved to Los Angeles, California where he has lived, when not in custody, until the day of his arrest for the re-entry offense that is the subject of this case. See id. ¶ 30, at 9. Rodriguez-Garcia indicated that his father, Mario Miranda, is deceased, having passed away from cancer in 2001, and that his mother, Christina Salomon, who suffers from diabetes and is disabled, resides in Los Angeles. See id. ¶ 29, at 9. He reported that he has three living siblings, all of whom live in Los Angeles. See id. Rodriguez-Garcia represents that he has not had any contact with his siblings since 1998. See id. ¶ 30, at 9.

In his Sentencing Memorandum, Rodriguez-Garcia indicated that Salomon is actually his aunt, not his biological mother. See Sentencing Memorandum at 4. At the sentencing hearing, Rodriguez-Garcia's counsel explained that Salomon raised Rodriguez-Garcia and that he therefore refers to her as his mother. See Transcript of Hearing at 7:8-15 (Gleria)(taken May 23, 2007)("Transcript").

Rodriguez-Garcia asserts that he obtained a General Equivalency Degree in 2002 while he was incarcerated; Bureau of Prisons records, however, do not reflect any education records for Rodriguez-Garcia. See PSR ¶ 39, at 11. Rodriguez-Garcia indicated that he can read and speak both Spanish and English, but did not report any vocational skills. See id.

Rodriguez-Garcia offered different personal history information during the compilation of a presentence report that the United States Probation Office ("USPO") prepared in January 2005 in association with a previous arrest for illegal re-entry. See id. ¶ 31, at 10. At that time, Rodriguez-Garcia indicated that he was born in La Puerta San Juan, Guanajuato, Mexico, and that his parents,

-2-

who he named as Christian Rodriguez and Maria Rodriguez-Enriquez, were both deceased. See id. Rodriguez-Garcia reported having one brother with whom he did not maintain contact, one half-brother who lived in El Salvador with whom he did not maintain contact, and three other half-siblings who reside in Mexico with whom he had not had any contact in approximately ten years. See id. ¶¶ 31-32, at 10.

During the preparation of the January 2005 presentence report, Rodriguez-Garcia reported that he received a high school diploma from Jordan High School in Los Angeles in 1992. See id. ¶ 39, at 11. The USPO counters, however, that Jordan High School is not listed in the Los Angeles directory. See id.

In addition to the conflicting information Rodriguez-Garcia has reported, the USPO reports that the National Crime Information Center lists his name as Christian Wilber Saloman and indicates that he was born in El Salvador. See id. ¶ 31, at 10. The USPO also notes that Immigration and Naturalization offense reports list Rodriguez-Garcia's place of birth as Culiacan, Sinaloa, Mexico. See id. The USPO states that it has not been able to determine which information is correct. See id.

On June 11, 1993, Rodriguez-Garcia was arrested for carrying a loaded firearm in a public place. See id. ¶ 15, at 5. Rodriguez-Garcia was convicted as a juvenile for this offense and, on August 3, 1993, he was sentenced in the Los Angeles Municipal Court to eight days in jail and twelve months probation. See id. On October 7, 1993, Rodriguez-Garcia was arrested for tampering with a motor vehicle. See id. ¶ 16, at 5. The Los Angeles Municipal Court sentenced him to an additional seven days in jail and two years probation on October 26, 1993, see id.; on November 2, 1993, his original probation was revoked and re-instated, see id. ¶ 15, at 5. On October 31, 1993, the Los Angeles County Sheriff's Department arrested Rodriguez-Garcia and charged him with

grand theft auto, carrying a loaded firearm in a public place, and providing false information to an officer. See id. ¶ 25, at 8-9. The USPO represents that there are no available records of the disposition of those charges. See id. ¶ 25, at 9.

Rodriguez-Garcia was first arrested as an adult on January 18, 1995. See id. ¶ 26, at 9. On that date, the South Gate, California Police Department arrested Rodriguez-Garcia and charged him with receiving stolen property. See id. The California prosecutor declined to prosecute those charges. See id.

Rodriguez-Garcia was arrested for stealing an automobile on August 11, 1995. See id. ¶ 17, at 5. On December 22, 1995, he was convicted of Grand Theft Auto in Los Angeles Superior Court and sentenced to 194 days in jail and 3 years probation. Rodriguez-Garcia was arrested again on October 26, 1996 for receiving stolen property and driving under the influence of alcohol. See id. ¶ 18, at 6. On November 27, 1996, he was convicted in Los Angeles Superior Court; at that time, his probation associated with his December 22, 1995 conviction was revoked, and he was sentenced to 16 months imprisonment to run concurrently with his earlier sentence. See id. ¶¶ 17-18, at 5-6. Rodriguez-Garcia was released from prison and deported to Mexico on December 24, 1997. See id. ¶ 18, at 6.

On November 13, 1998, United States Border Patrol ("USBP") agents stopped Rodriguez-Garcia driving a vehicle containing thirteen illegal aliens. See id. ¶ 27, at 9. Although Rodriguez-Garcia was not criminally prosecuted, the United States Immigration and Naturalization Service temporarily detained him administratively. See id. Rodriguez-Garcia was removed to Mexico on December 24, 1998. See id.

Less than one month after his removal, on January 19, 1999, Rodriguez-Garcia was arrested for illegal re-entry of a deported alien after stating to immigration inspection officials at the port of

entry in Columbus, New Mexico that he was a United States citizen. See id. ¶ 19, at 6-7. On July 28, 1999, he was convicted in the United States District Court for the District of New Mexico and sentenced to 24 months imprisonment and two years supervised release. See id. Rodriguez-Garcia was released from custody and deported to Mexico on October 16, 2000. See id.

Approximately two weeks later, on November 2, 2000, he was again arrested for re-entry of a deported alien after USBP agents stopped the vehicle in which he was traveling on a remote farm road near Columbus. See id. ¶ 20, at 7. Because of this second arrest, on March 27, 2001, his supervised release associated with his January 19, 1999 arrest was revoked, and he was sentenced to 18 months imprisonment for that offense. See id. ¶ 19, at 6. On the same day, Rodriguez-Garcia was sentenced in the United States District Court for the District of New Mexico to 46 months imprisonment and three years supervised release in association with the November 2, 2000 arrest. See id. ¶ 20, at 7. He was released from custody on March 5, 2004. See id.

On August 29, 2004, Rodriguez-Garcia was arrested for re-entry of a deported alien after USBP agents stopped the vehicle in which he was traveling on a frontage road near Deming, New Mexico. See id. ¶ 21, at 7-8. Rodriguez-Garcia was sentenced in the United States District Court for the District of New Mexico to 30 months imprisonment and two years supervised release on February 16, 2005. See id. ¶ 21, at 7. He was released from custody on October 31, 2006 and deported to Mexico on that day. See id. ¶¶ 4, 21, at 3, 7.

On December 28, 2006, USBP agents encountered Rodriguez-Garcia near Deming. See id. ¶ 4, at 3. When questioned about his citizenship, Rodriguez-Garcia admitted to the agents that he was a Mexican national and present in the United States illegally. See id. Subsequent to his December 28, 2006 arrest, a petition to revoke the supervised release associated with Rodriguez-Garcia's August 29, 2004 arrest was filed in the United States District Court for the District of New

Mexico and that case continues to be pending.  See United States v. Rodriguez-Garcia, No. CR 04-2363 JB, Petition for Revocation of Supervision for a Defendant Previously Deported, filed February 1, 2007 (Doc. 23).

## PROCEDURAL BACKGROUND

On February 5, 2007, in association with his December 28, 2006 arrest, the United States filed an Information charging Rodriguez-Garcia with illegal re-entry of a deported alien while an order of exclusion, deportation, and removal was outstanding in violation of 8 U.S.C. § 1326(a) and (b).  See Information, filed February 5, 2007 (Doc. 10).  On the same day, Rodriguez-Garcia pled guilty to the charge contained in the Information.  See Plea Minute Sheet, filed February 5, 2007 (Doc. 13).

In calculating Rodriguez-Garcia's adjusted offense level for purposes of his guideline sentence, the USPO assigned Rodriguez-Garcia a base offense level of 8, see U.S.S.G. § 2L1.2(a), increased his offense level 8 levels because he had previously been deported after being convicted of an aggravated felony, see U.S.S.G. 2L1.2(b)(1)(C); 8 U.S.C. § 1101(a)(43)(G) (defining a theft offense for which the term of imprisonment is at least one year as an "aggravated felony"), and subtracted 3 levels for Rodriguez-Garcia's acceptance of responsibility, see U.S.S.G. § 3E1.1.  See PSR ¶¶ 7-8, 13, at 4.  In calculating Rodriguez-Garcia's criminal history category, the USPO assigned Rodriguez-Garcia 3 points for his December 22, 1995 California conviction for Grand Theft Auto, 3 points for his November 27, 1996 California conviction for receiving stolen property and driving under the influence of alcohol, 3 points for his January 19, 1999 illegal re-entry, 3 points for his November 2, 2000 illegal re-entry, and 3 points for his August 29, 2004 illegal re-entry, see PSR ¶¶ 17-21, at 5-8; the USPO also added 2 points because Rodriguez-Garcia's December 28, 2006 arrest occurred while he remained under supervised release in association with his August 29,

2004 illegal re-entry and 1 point because the December 28, 2006 arrest occurred within two years of his having been released from custody, see PSR ¶¶ 22-23, at 8.  Rodriguez-Garcia's total of 18 criminal history points establishes a criminal history category of VI.  Rodriguez-Garcia's offense level of 13, combined with his criminal history category of VI, results in a guideline sentencing range of 33 to 41 months.

Rodriguez-Garcia filed his Sentencing Memorandum on April 13, 2007.  Rodriguez-Garcia does not object to the factual content of the PSR that the USPO prepared or assert that the USPO calculated the guideline sentence incorrectly.  Rather, he contends that the 18 U.S.C. § 3553(a) factors applicable to the Court's sentencing analysis counsel for a variance from the guideline sentence, because the sentence the Guidelines recommend is greater than necessary to achieve federal sentencing goals.  See Sentencing Memorandum at 7.  Rodriguez-Garcia moves the Court to impose a sentence below the range the Guidelines recommend.  See id. at 1.

The United States filed a response in opposition to Rodriguez-Garcia's request for a variance on April 19, 2007.  See United States' Response to Defendant's Amended Motion for Reasonable Sentence and Sentencing Memorandum Filed April 13, 2007, filed April 19, 2007 (Doc. 17)("United States' Response").  The United States contends that a sentence within the correctly calculated guideline range is a presumptively reasonable sentence, and argues that Rodriguez-Garcia has not presented evidence effectively rebutting that presumption.  See id. at 2.  The United States requests the Court impose a sentence within the guideline range.  See id. at 8.

## LAW REGARDING GUIDELINE SENTENCES

The Supreme Court of the United States' holding in United States v. Booker, 543 U.S. 220 (2005), "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well."  Id. at 245-46.  Under the new advisory

Guidelines scheme, "district courts have a freer hand in determining sentences." United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005). Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." Id.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D). See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the types of available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference. See

Rita v. United States, No. 06-5754, 2007 U.S. LEXIS 8269, at *21 (U.S. June 21, 2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them.

In Justice Breyer's remedial opinion in United States v. Booker, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing. See 543 U.S. at 246. To conform with Congressional intent, sentences must be "reasonable." Id. at 260-61. Consistent with that recognition, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness. See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006). First, the Tenth Circuit reviews the district court's consideration of the applicable guideline range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable." Id. Second, once this presumption is established, "[t]he presumption can be rebutted by demonstrating the sentence is unreasonable when considered against the other factors enumerated in 18 U.S.C. § 3553(a)." United States v. Dazey, No. 05-6258, 2007 U.S. App. LEXIS 15547, at *27 (10th Cir. June 27, 2007).

On the other hand, criminal sentences that vary materially from the properly calculated

guideline sentencing range are not accorded a presumption of reasonableness. See United States v. Cage, 451 F.3d at 594-95. The Tenth Circuit has explained that the determination whether a sentence is reasonable depends on the strength of the correlation between the magnitude of the presence of the factors enumerated in 18 U.S.C. § 3553(a) and the extent of the district court's departure from the guideline sentence. See United States v. Bishop, 469 F.3d 896, 907 (10th Cir. 2006).[1]

Finally, the Supreme Court has recently explained that the presumption of reasonableness afforded guideline sentences is "an appellate court presumption" and emphasized that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Rita v. United States, 2007 U.S. LEXIS 8269, at **24-25. More specifically, "[a] nonbinding appellate presumption that a Guidelines sentence is reasonable does not require the sentencing judge to impose that sentence." Id. at *27.

## ANALYSIS

Rodriguez-Garcia asserts that the Court should depart from the sentence that the Guidelines recommend because his criminal history category of VI substantially over-represents his criminal history and because he returned to the United States to reunite with his family. Because the Court believes that Rodriguez-Garcia's criminal history can be distinguished from most of the defendants

---

[1] In its June 21, 2007 opinion in Rita v. United States, the Supreme Court indicated that it will evaluate the Tenth Circuit's approach, i.e., the Tenth Circuit's understanding that "the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance," next term in United States v. Gall, No. 06-7949. Rita v. United States, 2007 U.S. LEXIS 8269, at *31 (citing United States v. Bishop, 469 F.3d at 907, and cases from the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits). The Supreme Court cautioned, however, that "[t]he fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness" for sentences that fall outside the guideline range. Rita v. United States, 2007 U.S. LEXIS 8269, at *30.

that the Court sees with a criminal history category of VI, the Court will depart from the criminal history category of VI and sentence consistent with a criminal history category of V. The Court will not, however, vary from the advisory guideline sentence.

**I.   RODRIGUEZ-GARCIA'S CRIMINAL HISTORY CAN BE DISTINGUISHED FROM THE TYPICAL DEFENDANT WITH A CRIMINAL HISTORY OF VI.**

Rodriguez-Garcia acknowledges that his criminal history is serious, but argues that a criminal history category of VI over-represents his criminal history because the typical defendant in that category is likely to have an even greater criminal history, including convictions for violent and/or controlled substances offenses. See Sentencing Memorandum at 3. He asserts that, with the possible exception of his juvenile arrest for carrying a loaded firearm in 1993, there is no indication that he is violent or that he has been involved in controlled substances. See id. at 3-4. Rodriguez-Garcia concludes that, because his criminal history consists exclusively of theft and immigration offenses, his criminal history is more comparable to defendants with a criminal history category of IV or V. See id. at 4.

The United States analogizes Rodriguez-Garcia's motion to a request for a downward departure under U.S.S.G. § 4A1.3(b), and notes that, under that guideline provision, a Court may grant a downward departure if the defendant's criminal history category "substantially" over-represents his criminal history. United States' Response at 4 (citing U.S.S.G. § 4A1.3(b))(emphasis in original). The United States emphasizes that Rodriguez-Garcia is only thirty years old, but has been arrested ten times, has five adult convictions, and, on numerous previous occasions, has had imposed terms of probation and supervised release revoked. See United States' Response at 5. The United States argues that "the information contained in the PSR shows that [Rodriguez-Garcia's] criminal history has not been over-represented, let alone substantially over-represented." Id.

Similarly, in preparing the PSR, the USPO evaluated whether a criminal history category of VI over-represented Rodriguez-Garcia's criminal history and determined that it did not. See PSR ¶ 46, at 13.

The Court acknowledges that Rodriguez-Garcia has an extensive criminal history, but believes that, when it considers his overall criminal history in the context of the 18 U.S.C. § 3553(a) factors applicable to its analysis, the resulting criminal history category is too high. In the Court's experience, the typical defendant with a criminal history category of VI has a longer list of crimes or a criminal history that includes serious violent or drug-related crimes, which are largely absent from Rodriguez-Garcia's record. While Rodriguez-Garcia has five adult convictions, only two -- the two oldest offenses -- are for crimes other than immigration offenses and neither is for a violent offense or an offense involving controlled substances. Of the 18 criminal history points that the USPO has assigned to Rodriguez-Garcia, 12 of them are attributable to re-entry offenses and 3 of those 12 are based on the timing of the offense that is the subject of this case, rather than the substantive nature of the crime. Under the circumstances, the Court believes that a criminal history category of VI over-represents both Rodriguez-Garcia's criminal history and the threat he poses to commit additional crimes in the future.

The Court will grant Rodriguez-Garcia's motion in part and impose a sentence consistent with a criminal history category of V. To the extent that Rodriguez-Garcia requests the Court sentence him consistent with a criminal history category of IV, however, the Court will deny the request. While the Court believes that a criminal history category of VI is reserved for a limited class of especially dangerous and/or violent criminals, the Court also believes that an adjustment to a criminal history category of IV -- which would require a reduction of at least 9 points from Rodriguez-Garcia's criminal history score -- would not adequately reflect his serious and extensive

criminal history.

Although a presumption of reasonableness does not limit a sentencing court's discretion, see Rita v. United States, 2007 U.S. LEXIS 8269, at \*\*24-25, the Court continues to believe that the Guidelines are a helpful place to begin its sentencing analysis and are useful in keeping sentences consistent among similarly situated defendants. In this case, however, when the Court considers the nature of and motivation for the illegal re-entry offense, combined with the nature and age of the 1995 theft offense, it believes that the sentence the Guidelines produce is greater than necessary to satisfy federal sentencing goals. The Court believes that a sentence consistent with Rodriguez-Garcia's offense level of 13 combined with a criminal history category of V -- resulting in a sentencing range of 30 to 37 months --  more accurately reflects the policies that are expressed in the Guidelines and results in a reasonable sentence that is sufficient without being greater than necessary to achieve Congress' sentencing objectives.

## II.    RODRIGUEZ-GARCIA'S MOTIVE FOR RETURNING TO THE UNITED STATES DOES NOT JUSTIFY A VARIANCE FROM THE GUIDELINE SENTENCE.

Rodriguez-Garcia asserts that he came to the United States when he was eight years old and that he has significant family ties in the United States. See Sentencing Memorandum at 4. He references Salomon and the three siblings that the PSR lists as living in the Los Angeles area. See id. Rodriguez-Garcia also maintains that he has significant cultural ties in the United States and contends that he was raised and educated entirely in the United States. See id. at 5.

The United States counters that, while Rodriguez-Garcia's circumstances are unfortunate, they are not so extraordinary as to warrant a variance from the guideline sentence. See United States' Response at 6. The United States explains that many defendants convicted of illegal re-entry have families on both sides of the border and contend that they returned to be with their family. See

id. The United States reasons that, "[i]f all defendants who returned to the United States because they missed their family received a deviation from the advisory sentencing guideline range, more defendants would qualify for a deviation that those who do not." Id.

The Court understand that a defendant's family circumstances and cultural assimilation may reflect upon his personal characteristics in a manner that becomes relevant to sentencing. Moreover, at least in the context of a motion for downward departure, the United States Court of Appeals for the Tenth Circuit has acknowledged that district courts may consider cultural assimilation in the context of extraordinary family ties as grounds for imposing a sentence outside the range that the Guidelines recommend. See United States v. Marquez-Olivas, 172 Fed. Appx. 855, 857 (10th Cir. 2006)(affirming district court's denial of defendant's motion for a downward departure based on cultural assimilation and extraordinary family ties); United States v. Alvarez-Alvarez, 158 Fed. Appx. 973, 975 (10th Cir. 2005)(same). Nevertheless, the Tenth Circuit has indicated that departure on this basis requires "extraordinary circumstances," United States v. Marquez-Olivas, 172 Fed. Appx. at 857, and the Court is not convinced that Rodriguez-Garcia's personal characteristics and/or his family circumstances are sufficient to justify a variance from the sentence the Guidelines recommend.

In reaching its conclusion, the Court notes that the information that Rodriguez-Garcia has reported to the USPO, and that he has presented in his written memorandum and at the sentencing hearing, is insufficient for the Court to develop a clear picture of his family structure and his ties to the United States. The various sources of information contain vague and inconsistent evidence, and the Court is not persuaded that Rodriguez-Garcia maintains regular contact or close relationships with the individuals he references in his Sentencing Memorandum. More important, however, Rodriguez-Garcia's personal history and his family situation is not significantly different from many

defendants charged with re-entering the United States illegally after deportation. Many defendants charged with re-entry crimes have prior convictions, prior deportations, or both, and many have family, including immediate family, in the United States. Rodriguez-Garcia's personal history and ties to individuals in the United States do not counsel for a variance from the guideline sentence.

### III.   THE NEED FOR THE SENTENCE TO PROMOTE CERTAIN STATUTORY OBJECTIVES.

Among other objectives, the Court's sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide adequate deterrence to both the defendant and to the public at large. The Court believes that the sentence of 30 months, the low-end of the range it has found, reflects the seriousness of the illegal re-entry offense, but also promotes respect for the law and provides just punishment. The Court also believes that this sentence affords adequate deterrence and protects the public. The Court believes that a sentence of 30 months fully reflects each of the factors enumerated in 18 U.S.C. § 3553(a), including the need to impose uniform sentences to similarly situated defendants.

In sum, the sentence accounts for the Court's concerns regarding the Guidelines' over-representation of Rodriguez-Garcia's criminal history, but still reflects the important policies behind federal immigration laws. The Court believes that, after it incorporates the adjustment in Rodriguez-Garcia's criminal history, a sentence of 30 months is fair, reasonable, and sufficient without being greater than necessary to meet federal sentencing objectives.

**IT IS ORDERED** that Rodriguez-Garcia's Amended Motion for Reasonable Sentence and Sentencing Memorandum is granted in part and denied in part. The Court will depart from the criminal history category calculated under the Guidelines and sentence Rodriguez-Garcia to a term of 30 months. The Court will deny the request for a variance.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  Acting United States Attorney
James D. Tierney
Kimberly A. Brawley
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Kenneth A. Gleria
Albuquerque, New Mexico

    *Attorney for the Defendant*